UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA K. LAM and DOUGLAS RING, | No. 2:19-cv-00709-TLN-CKD PS |
| Plaintiffs, | |
| v. | ORDER AND |
| PENNY MAC, et al., | FINDINGS & RECOMMENDATIONS |
| Defendants. | |

**I.     Introduction**

This case proceeds on plaintiffs' operative first amended complaint. (ECF No. 28.) The following motions are before the court and came on regularly for hearing on October 30, 2019: (1) Breckenridge Property Fund 2016 ("Breckenridge") and Wedgewood, Inc.'s ("Wedgewood") motion to dismiss (ECF No. 34) and request for judicial notice (ECF No. 35); (2) Fidelity National Title's ("Fidelity") motion to dismiss (ECF No. 39); (3) Penny Mac's motion to strike (ECF No. 40) and request for judicial notice (ECF No. 41); (4) Penny Mac, Mass Mutual Life Insurance ("Mass Mutual"), and Mortgage Electronic Registration Systems' Motion to Dismiss (ECF No. 42) and request for judicial notice (ECF No. 43); and (5) National Default Servicing Corporation's ("National Default") motion to dismiss (ECF No. 49) and request for judicial notice (ECF No. 50). Plaintiffs filed an opposition to only Breckenridge's and Wedgewood's motion despite receiving several warnings from the court that failure to file an opposition could

result in a recommendation that this action be dismissed for failure to prosecute.

Christopher Rivas, Elaine Yang, Mark Erlich, and Megan Lees, separate counsel for the defendants, appeared telephonically at the October 30, 2019 hearing. Plaintiffs did not appear.

## II. **Procedural History**

Plaintiffs proceed in this case in pro per and have filed the requisite filing fee. On May 24, 2019, plaintiffs filed a motion to amend the complaint. (ECF No. 9.) Thereafter, Breckenridge and Wedgewood filed a motion to dismiss and request for judicial notice. (ECF Nos. 21–22.) On June 19, 2019, the court granted plaintiffs' motion to amend the complaint to add a defendant given the early stage of the case, and vacated the hearing on Breckenridge and Wedgewood's motion. (ECF No. 26.) On June 20, 2019, Fidelity filed a motion to dismiss.

On July 19, 2019, plaintiffs filed their first amended complaint. (ECF No. 28.)

Also on July 19, 2019, plaintiffs filed a motion for extension of time to file a second amended complaint. (ECF No. 30.) On July 23, 2019, the court denied plaintiffs' request to file a second amended complaint and vacated the hearing on Fidelity's motion. (ECF No. 31.) The court ordered defendants to "re-file and re-notice, if necessary, a motion to dismiss plaintiffs' operative first amended complaint (ECF No. 28)." (ECF No. 31.)

Two days later, on July 25, 2019, plaintiffs filed a document titled "corrected first amended complaint." (ECF No. 32.) This document was stricken in light of the court's July 23, 2019 order denying plaintiffs' request to file a second amended complaint. (Id.)

On August 27, 2019, the court issued an order vacating the hearing on Breckenridge and Wedgewood's motion to dismiss because no opposition was filed. (ECF No. 54.) The court warned plaintiffs that failure to file an opposition will result in plaintiffs not being entitled to be heard at oral argument. (Id.) The court ordered plaintiffs to file an opposition no later than September 25, 2019. (Id.) Similarly, on September 17, 2019, the court issued a separate order because plaintiffs failed to file oppositions to four other motions. (ECF No. 56.) The court again cautioned plaintiffs that failure to timely file oppositions will be deemed a statement of non-opposition to the pending motions that will result in a recommendation that this action be dismissed. (Id. (citing Fed. R. Civ. P. 41(b) (providing for dismissal of actions based on lack of

prosecution).) The court also clarified that plaintiffs' "corrected" first amended complaint is stricken. (Id.) The court continued the hearing on all outstanding motions to October 30, 2019 and ordered plaintiffs to file oppositions no later than October 16, 2019. (Id.)

In the interim, defendants filed the motions pending before the court between July 30, 2019 and August 19, 2019. (ECF Nos. 34, 39, 40, 42, and 49.)

Plaintiffs filed only one opposition—to Breckenridge and Wedgewood's motion to dismiss. (ECF No. 58.) No other opposition was filed. Breckenridge and Wedgewood filed a reply on October 17, 2019 (ECF No. 59), and Penny Mac, Mass Mutual, and Mortgage Electronic Registrations Systems filed a reply on October 23, 2019 (ECF No. 60.)

### III. Allegations in the Operative Complaint

As noted above, the operative complaint is plaintiffs' first amended complaint filed on July 19, 2019. (ECF No. 28.) Plaintiffs allege as follows.[1]

On November 28, 2018 Penny Mac Loan Services LLC ("Penny Mac") "successfully blocked the sale of the real property in question" located at 124 Illinois St., Vallejo CA 94590 for the amount of $370,000 by Rajesh Sharma to pay off debts secured by the property during a Chapter 11 bankruptcy proceeding. (ECF No. 28 at ¶ 6; ECF No. 32 at ¶ 6.)

On February 13, 2019, Penny Mac initiated a non-judicial foreclosure in violation of FDCPA 15 U.S.C. § 1692f(6) during the bankruptcy proceeding with GrandView Financial LLC ("GrandView") regarding the property. (Id. at ¶ 7; ECF No. 32 at ¶ 7.)

Auction.com, acting on National Default Servicing Corporation's behalf, sold Penny Mac's "unproven lien in accordance with CCC Sec.2924 to Breckenridge" to "satisfy an alleged debt of $351,632.46" that Penny Mac "regarded as discharged." (Id. at ¶ 8; ECF No. 32 at ¶ 8.)

On April 1, 2019, plaintiffs received notice that Breckenridge initiated an unlawful detainer case against plaintiff Monica K. Lam ("Lam"). (Id. at ¶ 9 and page 9; ECF No. 32 at ¶ 9 and page 7.)

---

[1] The court has also evaluated plaintiffs' "corrected" first amended complaint and finds that the allegations therein are largely the same and fail to state a claim upon which relief may be granted for the same reasons articulated herein. (Compare ECF No. 28 with ECF No. 32.)

Lam communicated with counsel for Penny Mac in January and February 2019 regarding whether her loan could be modified. (ECF No. 28 at 8.) On February 26, 2019, a representative with Wedgewood confirmed that tenants were living at the property and if they wished to remain, they would need to speak with Breckenridge's counsel. (Id. at 8–9.) According to plaintiffs, they had a lease agreement with GrandView Financial and the unlawful detainer notices violated the Protecting Tenants at Foreclosure Act. (Id. at 9; ECF No. 32 at 7.) On May 6, 2019, plaintiff Douglas Ring ("Ring") asked a Breckenridge representative why it owned the property while he was paying rent to GrandView Financial. (Id.; ECF No. 32 at 7.) Plaintiffs believe Wedgewood and Breckenridge "are acting in bad faith and are attempting to bully [plaintiffs] with improper and unjust legal proceedings in an attempt to effectuate a transfer of real property that otherwise would be taken possession of to pay a debt while avoiding addressing the title issues that started this. . . . In this manner, Wedgewood and Breckenridge are acting in concert with other Defendants in order to collect a debt that they do not have a right to in violation of FDCPA 1692(f)6." (Id. at 9–10; ECF No. 32 at 7.)

Plaintiffs allege that Lam owned the property and on or about November 1, 2016, Lam executed a "Real Estate Shared-Equity Transaction & Purchase and Sale Agreement" with GrandView Financial in favor of Lam. (Id. at ¶¶ 15, 24; see also Ex. 3 within Ex. A; ECF No. 32 at ¶¶ 23–24.) As a result, at present, plaintiffs and GrandView Financial are parties to a rental agreement for payment of $1,000 per month in rent for the property. (Id. at ¶ 30.) Based on this, it appears Lam concedes she no longer has a right to the property and alleges that she and Ring are now renting the property from GrandView. See also ECF No. 58 (plaintiffs' opposition to Breckenridge's and Wedgewood's motion arguing that there is a "federal stay in place by the title owners" of the property, not that plaintiffs are the owners of the property).

On February 2, 2017, Penny Mac sent a letter to Lam stating that the loan on the property was sold to Mass Mutual and Penny Mac would continue to service the loan. (Id. at ¶¶ 31–32, 43–45; ECF No. 32 at ¶¶ 43–45.) The letter apparently references a loan number ending in 2683 but according to plaintiffs, Lam's loan on the property ended in 6290. Based on this, plaintiffs allege

> [T]he loan was satisfied by insurance proceeds or otherwise and/or replaced by a new loan such that that Loan was satisfied and, pursuant to the Original Lender DOT, the Original Lender (or its successor in interest) is required to request that the Original DOT Trustee (or its successor in I 4 11 interest) reconvey the Property and to surrender the Original Lender DOT and the Original Note to the Original DOT Trustee (or its successor in interest), who was required to reconvey the 16 11 Property without warranty to the Former Owner (or his/her successor in interest).

(Id. at ¶ 46; see also id. at 91 (GrandView's complaint that alleges the same in paragraph 67); ECF No. 32 at ¶ 46.) On August 15, 2017, Mortgage Electronic assigned the "Original Lender DOT, but not 1811 the Original Note, to PennyMac LLC pursuant to an Assignment of Deed of Trust." (Id. at ¶ 47; ECF No. 32 at ¶ 47.) Plaintiffs allege the assignment is "void, invalid, and ineffective" because the assignment did not assign the original note. (Id. at ¶ 49.)

"On December 22, 2017, PennyMac LLC filed a motion for relief from stay . . . seeking relief from the automatic stay of 11 U.S.C. § 362 to proceed with remedies, including foreclosure of the Property." (Id. at ¶ 50.) Plaintiffs allege that "Claimants" opposed the motion on January 9, 2018. (Id. at ¶ 53.) It is unclear whether "Claimants" refers to plaintiffs or to GrandView, which is the entity that opposed PennyMac's motion in the separate bankruptcy case. Following further briefing and a hearing, the court granted the motion and Penny Mac has proceeded with efforts to effectuate a foreclosure on the property. (Id. at ¶¶ 55–62; ECF No. 32 at ¶¶ 56–61.) The court notes that plaintiffs appear to have again taken these allegations directly from a complaint filed by GrandView Financial, LLC in a bankruptcy action. (Compare id. at 90–91 (GrandView makes the same allegations in its complaint at paragraphs 50 through 59; Compare ECF No. 32 at 135–48 (same).)

Plaintiffs appear to have two claims. One claim against Penny Mac based on FDCPA 15 U.S.C. § 1692f(6), (Id. at ¶¶ 11–14 and 72–76; ECF No. 32 at 13), although Breckenridge is mentioned as well. (Id.) A second claim against all defendants is for declaratory relief under 28 U.S.C. § 2201. (Id. at ¶ 63–69.) As noted above, these appear to be largely based on a complaint GrandView Financial, LLC filed. (See id. at 86–92.)

Regarding the first claim, plaintiffs allege that Penny Mac "performed a nonjudicial foreclosure to avoid having to prove if, and how much, they were owed in bankruptcy court." (Id.

at ¶ 12; ECF No. 32 at 13, ¶ 12.) Breckenridge "refuses to provide proof of rights in defiance of the UCC as well and continues to harass" plaintiffs as tenants with an unlawful detainer lawsuit in an attempt to gain possession of the property. (Id. at ¶ 13; ECF No. 32 at 31, ¶ 13.) Lam's credit has been damaged, among other damages plaintiffs claim they suffered. (Id. at ¶ 14; ECF No. 32 at 13, ¶ 14.) Penny Mac proceeded to "effectuate a Foreclosure of the Property pursuant to a Foreclosure Sale thereof" and "PennyMac and its successors and/or assigns had not present right to possession of the Property." (Id. at ¶¶ 73–74.)

Regarding the second claim, which is only in the operative first amended complaint, plaintiffs similarly allege that there is a "present case and/or controversy between the Claimants, on the one hand, and the Defendant's, on the other hand, regarding," among other things, whether Penny Mac had title to the property, whether a loan was satisfied by insurance proceeds, and whether any of the defendants has a lien on the property. (Id. at ¶ 64.) Plaintiffs allege Penny Mac never owned and had title to the original note, Penny Mac never had standing under the original note, the loan was satisfied by insurance proceeds "or other wise and/or replaced by a new loan," and none of the defendants has a lien on the property. (Id. at ¶¶ 65–68.) Based on this, plaintiffs allege they are entitled to a declaratory judgment. (Id. at ¶ 69.)

## IV. Legal Standards

### A. Motion to Dismiss

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiffs' claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071; see also W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). The court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in her complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under the standard announced in Iqbal).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Bos. Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts that may be judicially noticed, Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. S. Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986).

### B. Section 1692f of the Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") was enacted to protect consumers from "abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692(e). The FDCPA is a strict liability statute that prohibits debt collectors "from making false or misleading representations and from engaging in various abusive and unfair practices." Laungenour v. Northland Grp., Inc., No. 2:12-cv-2995-GEB-DAD, 2013 WL 3745727, at *2 (E.D. Cal. July 15, 2013); see also Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1119 (9th Cir. 2014). To

state an FDCPA claim, a complaint must plead four elements: (1) the plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3); (2) the debt at issue arises out of a transaction entered into for personal purposes; (3) the defendant is a debt collector within the meaning of § 1692a(6); and (4) the defendant violated a provision of the FDCPA. Laungenour, 2013 WL 3745727, at *2. Under § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

**V.     Analysis**

      **A.     Breckenridge and Wedgewood's Motion to Dismiss (ECF No. 34)**

The court notes first that Breckenridge and Wedgewood, like all other defendants, filed their motion based on plaintiffs' stricken second amended complaint. (ECF No. 34 at 3.) This case proceeds on plaintiffs first amended complaint, which is docket number 28. (See ECF No. 31 (order denying request to file a second amended complaint; see also ECF No. 56 (order clarifying that plaintiffs' "corrected" first amended complaint is stricken).) However, there would not be a different outcome even if plaintiffs' "corrected" complaint were addressed.

Plaintiffs opposed this motion, arguing:

> While we may concede that FDCPA (a) does not apply, f(6) certainly does. Breckenridge did not have title and could not have had title as it was previously sold to Mass Mutual Life Insurance, who did not then transfer title to them or any other entity who could legally transfer title to Breckenridge Property Fund 2016, LLC. PennyMac and subsequent entities participating in this scheme should know the law and understand that title, once tampered with, must be perfected, not transferred with the haste of a thief fencing stolen goods, lying about their ownership.
>
> However, there is no request to dismiss charges regarding the PTFA and tenants Monica lam and Douglas Ring, so we reassert that Breckenridge Property Fund 2016, LLC has violated the PTFA by pursuing and winning an eviction despite evidence of tenant status and a federal stay in place by the title owners of 124 Illinois St. Vallejo, Ca 94590.

(ECF No. 58 at 1.)

First, plaintiffs fail to state any claim against Wedgewood. At most, plaintiffs allege that a representative of Wedgewood "confirmed that there were and are tenants living at the property." (ECF No. 28 at 8.) Without more, plaintiffs cannot proceed on a claim against Wedgewood.

8

Plaintiffs also fail to state a claim against Breckenridge. One of the elements of a claim under the FDCPA is that the plaintiffs' debt is covered. A debt under the FDCPA is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgement." 15 U.S.C. § 1692a(5). Here, plaintiffs allege that Lam transferred her interest in the property to GrandView Financial on November 1, 2016 through execution of a "Real Estate Shared-Equity Transaction & Purchase and Sale Agreement." (ECF No. 28 at ¶¶ 15, 24 (referring to Lam as "the 'Former Owner'").) Plaintiffs do not allege facts to support an FDCPA claim because plaintiffs failed to meet the threshold requirement of establishing plaintiffs owe a debt that is covered by the FDCPA. Without a debt, there can be no claim under the FDCPA.

Similarly, plaintiffs fail to allege either Breckenridge (or Wedgewood) are debt collectors under the FDCPA. Plaintiffs' only reference to the defendants as "debt collectors" is in paragraph 14, which vaguely alleges: "The Claimants are informed and believe and based thereon alleges that each defendant PennyMac LLC and National Default Servicing Corporation are 'debt collectors,' as that term is defined in 15 U.S.C. § 1692a(6)." (ECF No. 28 at ¶ 14.) There are no allegations specific to Breckenridge or Wedgewood. Even if this allegation were specific to Breckenridge and/or Wedgewood, it is insufficient to draw a reasonable inference that the entities are debt collectors. See Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1208 (9th Cir. 2013) (explaining that the "complaint must plead 'factual content that allows the court to draw the reasonable inference' that Wells Fargo is a debt collector" (quoting Iqbal, 556 U.S. at 678)).

Accordingly, plaintiffs' first amended complaint fails to state a claim under 15 U.S.C. § 1692(f)(6) against Breckenridge and Wedgewood.[2]

///

---

[2] To the extent plaintiffs argue in their opposition that the Protecting Tenants at Foreclosure Act of 2009 ("PTFA") applies here, there is no claim under the PTFA alleged in the first amended complaint and this issue is not before the court. At most, plaintiffs mention the PTFA, but do not explicitly present a claim under the PTFA. (See ECF No. 28 at 9:5; see also ECF No. 32 at 7:3.)

**B.     Fidelity National Title's Motion to Dismiss (ECF No. 39)**

Turning to Fidelity's motion, plaintiffs do not explicitly raise a claim against Fidelity under the FDCPA.  Even assuming *arguendo* plaintiffs intended to, like Breckenridge and Wedgewood, plaintiffs fail to allege any facts supporting that (1) plaintiffs owe a debt that is covered by the FDCPA, or (2) Fidelity is a debt collector under the FDCPA.  In fact, there are no allegations as to Fidelity that address either of these elements.

For these and the reasons outlined above, plaintiffs' complaint against Fidelity fails to state a claim upon which relief may be granted.

**C.     Penny Mac, Mass Mutual Life Insurance, and Mortgage Electronic Registration Systems' Motion to Dismiss (ECF No. 42)**

Turning to Penny Mac, Mass Mutual Life Insurance, and Mortgage Electronic Registration Systems' motion to dismiss, plaintiffs' claims against these entities fails for the same reasons discussed above.

First, there are no allegations pertaining to Mass Mutual Life Insurance.  Plaintiffs' FDCPA claim against this entity therefore fails.

Second, plaintiffs' allegations regarding Mortgage Electronic Registration Systems are insufficient to state a claim under the FDCPA.  Plaintiffs allege that "the Original Lender DOT purports to provide that (a) [Mortgage Electronic Registration Systems] was the nominee of the Original Lender and the Original Lender's successors and assigns and (b) [Mortgage Electronic Registration Systems] was the beneficiary under the Original Lender DOT."  (ECF No. 28 at ¶ 21.)  Plaintiffs further alleged that on August 15, 2017, [Mortgage Electronic Registration Systems] purported to assign the Original Lender DOT, but not 1811 the Original Note, to PennyMac LLC pursuant to an Assignment of Deed of Trust."  (Id. at ¶ 47.)  Plaintiffs also allege that Mortgage Electronic Registration Systems "lacked authority to assign the Original Note and Loan."  (Id. at ¶ 49.)  Nothing in these allegations regarding Mortgage Electronic Registration Systems establish that plaintiffs owe a debt that is covered by the FDCPA, or that Mortgage Electronic Registration Systems is a debt collector under the FDCPA.

Finally, regarding Penny Mac, as the court noted previously, plaintiffs' allegations are

based in large part on a complaint GrandView filed in a separate bankruptcy case. In that regard, Penny Mac argues correctly that plaintiffs cannot collaterally attack the rulings of a federal court in a separate complaint, which appears to be exactly what plaintiffs are attempting. (See ECF No. 42 at 15–16.) Penny Mac is also correct that plaintiffs have not sufficiently alleged that they have any cognizable interest in the property. (Id. at 8; see also ECF No. 28 at ¶¶ 15, 24, 30 (plaintiffs concede that Lam conveyed her interest in the property to GrandView Financial three years ago and is at present a tenant, not a property owner).) Plaintiffs primarily take issue with the fact that Penny Mac is attempting foreclosure on the property they currently rent.[3] However, whether Penny Mac was attempting to collect a debt from GrandView is not dispositive here. Plaintiffs allege that Penny Mac is a "debt collector" under the FDCPA (ECF No. 28 at ¶ 14), but they fail to plead that Penny Mac was "collecting a debt," which is a requisite allegation to state a claim for violation of the FDCPA. See Izenberg v. ETS Servs., LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) (quoting Ines v. Countrywide Home Loans, No. 08cv1267 WQH (NLS), 2008 WL 4791863, *2 (S.D. Cal. Nov. 3, 2008)); see also Diaz v. Nationstar Mortg. LLC, Case No. 17cv1607 MMA (BGS), 2018 WL 1071699, at *8 (S.D. Cal. Feb. 27, 2018) (noting that the "[p]laintiff does not explain how Nationstar's primary purpose is security interest enforcement beyond the boilerplate allegation that 'NATIONSTAR is a mortgage servicing entity whose primary business is collecting debts owed or due another and enforcing security interests'" (citation omitted)). As explained above, without a debt, there can be no claim under the FDCPA. Similarly, plaintiffs fail to establish that Penny Mac engaged in collection of a debt under the FDCPA. Vien-Phuong Thi Ho v. ReconTrust Co., NA, 858 F.3d 568, 573–74 (9th Cir. 2017) (explaining that non-judicial notices of foreclosure that did not request payment do not fall under

---

[3] The court notes that plaintiffs have unsuccessfully attempted to remove unlawful detainer actions filed by Breckenridge three times based on the FDCPA. See 2:19-cv-00728-JAM-KJN (Monica K. Lam removed a complaint for unlawful detainer, Superior Court for the State of California County of Solano Case No. FCM164799[] and FCM164792); see also 2:19-cv-00978-KJM-CKD (plaintiffs removed another unlawful detainer case, Superior Court for the State of California County of Solano Case No. FCM165846); and see 2:19-cv-00979-JAM-DB (Monica K. Lam removed another unlawful detainer case, Superior Court for the State of California County of Solano Case No. FCM165848).

11

the FDCPA's "carefully drawn distinction between debt collectors and enforcers of security interests" and there are express exceptions from the term "debt collector" for an entity whose activities are "incidental to . . . a bona fide escrow arrangement" (quoting 15 U.S.C. § 1692a(6)(F))); see also Ines, 2008 WL 491863, at *2 (explaining that "the 'activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA.'" (quoting Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002))).

For these and the reasons outlined above, plaintiffs' complaint against Penny Mac, Mass Mutual Life Insurance, and Mortgage Electronic Registration Systems fails to state a claim upon which relief may be granted.

### D. Penny Mac's Motion to Strike (ECF No. 40)

Penny Mac moved to strike the wrong complaint. Although Penny Mac does not cite the corresponding docket number, it refers to the first amended complaint as the "corrected" first amended complaint, which is not the operative complaint. Because the court finds that Penny Mac's motion to dismiss should be granted, and it would be improper to consider this motion to strike in light of its reference to the wrong operative complaint, the court will deny the motion to strike without prejudice.

### E. National Default Servicing Corporation's Motion to Dismiss (ECF No. 49)

Here, plaintiffs allege that they received a loan modification letter from National Default dated January 14, 2019. (ECF No. 28 at 8.) Plaintiffs allege they "are informed and believe" that National Default is a debt collector. (Id. at ¶ 14.) Finally, plaintiffs allege that National Default, as Penny Mac's successor and/or assigns, "never had, and currently does not have, standing under the Original Note and Original lender DOT to proceed with any efforts to effectuate a Foreclosure of the Property." (Id. at ¶ 69.)

For the same reasons discussed above, the court finds that plaintiffs fail to state a claim against National Default, namely that plaintiffs have not established they owe a debt and that National Default is a debt collector under the FDCPA.

///

### F. Plaintiffs' Related Claim for Declaratory Relief Fails

For the sake of completeness, the court will address plaintiffs' second claim for declaratory relief. The Declaratory Judgment Act allows a district court to "declare the rights and other legal relations of any interest party seeking such declaration." 28 U.S.C. § 2201(a). Here, because plaintiffs do not have a claim under the FDCPA, the court must also dismiss the related request for declaratory relief. In order to be entitled to relief under the Declaratory Judgment Act, the party must have a viable underlying claim. See City of W. Sacramento v. R & L Bus. Mgmt., No. 2:18-cv-900 WBS EFB, 2019 WL 2249630, at *4 (E.D. Cal. May 23, 2019) (collecting cases).

## VI. Leave to Amend Futile

A court granting a motion to dismiss a complaint must decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (explaining that "[l]eave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility")).

As noted, the court undertook the time to evaluate plaintiffs' operative complaint and their "corrected" first amended complaint to determine whether leave to amend would be futile. Plaintiffs' allegations are largely the same and plaintiffs again fail to cure the deficiencies explained herein. The court finds that plaintiffs will not be able to cure the deficiencies even if

given leave to amend their complaint yet again. This is because plaintiff Monica Lam concedes she is no longer an owner of the property at issue, which means she does not owe a debt in connection with the property. (See ECF No. 32 at ¶ 23–24.) As stated above, without a debt there can be no claim under the FDCPA and any amendment would be futile. The court will therefore recommend dismissing plaintiffs' complaint as to the moving defendants without leave to amend. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (while the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be granted where it appears the deficiency cannot be overcome by amendment); Cal. Architectural Bldg. Prod. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1988) (noting that "[v]alid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility" (citing Foman, 371 U.S. at 182)).

**VII.    Requests for Judicial Notices**

Requests for judicial notice were filed in connection with the motions addressed herein. (See ECF Nos. 35, 39-2, 41, 43, and 50.)

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." Id.; see also Fed. R. Evid. 201; Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

Here, the court finds it unnecessary to consider the documents in resolving the present motions and therefore denies the requests for judicial notice as to those documents.

**VIII.   Conclusion**

For these reasons, it is hereby ORDERED that:

1.     The moving defendants' requests for judicial notice (ECF Nos. 35, 39-2, 41, 43, and 50) are DENIED as unnecessary; and

2.     Penny Mac's motion to strike (ECF No. 40) is DENIED without prejudice.

Further, it is hereby RECOMMENDED that:

1. Breckenridge and Wedgewood's motion to dismiss (ECF No. 34) be GRANTED;

2. Fidelity National Title's motion to dismiss (ECF No. 39) be GRANTED;

3. Penny Mac, Mass Mutual Life Insurance, and Mortgage Electronic Registration Systems' motion to dismiss (ECF No. 42) be GRANTED;

4. National Default Servicing Corporation's motion to dismiss (ECF No. 49) be GRANTED; and

5. Plaintiffs' claims against Breckenridge, Wedgewood, Fidelity National Title, Penny Mac, Mass Mutual Life Insurance, and Mortgage Electronic Registration Systems be dismissed without leave to amend for failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiffs may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiffs are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 15, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

15 lam709.mtd.f&r